
FILED

AUG 16 2013

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CHUCK IBEY,<br><br>        Plaintiff,<br><br>vs.<br><br>TRINITY UNIVERSAL INSURANCE<br>COMPANY OF KANSAS and JOHN<br>DOES 1 thru 5 as natural persons,<br>partnerships, limited liability<br>corporations, corporations, or other<br>business entities,<br><br>        Defendants. | CV 12–31–M–DWM<br><br>ORDER |

Chuck Ibey sues Trinity Universal Insurance Company of Kansas on several insurance-related claims. Both parties filed several motions in limine. The Court grants them in part and denies them in part.

## BACKGROUND

Ibey was injured in an automobile accident in December 2007. He claims to have sustained injuries to his back, neck, and shoulder. Trinity was his insurer at the time. Ibey claims that Trinity hasn't paid him for all of the loss to which he is entitled under his insurance policy with Trinity. He also claims that Trinity has

1

violated Montana's Unfair Trade Practices Act. Both parties now move to exclude several categories of evidence and testimony.

## STANDARD

Courts have "wide discretion" in considering and ruling on a motion in limine. *Ficek v. Kolberg–Pioneer, Inc.*, 2011 WL 1316801 at *1 (D. Mont. Apr.5, 2011) (citing *Trichtler v. Co. of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004)). But a Court will grant a motion in limine and exclude evidence only if the evidence is "inadmissible on all potential grounds." *BNSF Ry. v. Quad City Testing Laboratory, Inc.*, 2010 WL 4337827 at *1 (D. Mont. Oct. 26, 2010) (citations and internal quotation marks omitted). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.* (citations and internal quotation marks omitted). "This is because although rulings on motions in limine may save time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Id.* (citations and internal quotation marks omitted).

## ANALYSIS

## I.   Trinity's motions in limine

Trinity filed six motions in limine, some of which are opposed and others

that aren't. The opposed motions are motions to exclude evidence or testimony related to: (1) Ibey's 2008 cervical fusion surgery, (2) the amount of the policy limits, and (3) Ibey's alleged economic damages. Trinity's unopposed motions are motions to: (1) exclude evidence or testimony related to Ibey's right ankle injuries, (2) preclude Ibey's expert witness Larry Reed from offering an opinion that Trinity violated Montana Law or failed to observe or comply with internal claims-handling procedures, and (3) exclude witnesses from the courtroom under Rule 615. The Court grants the motions in part and denies them in part.

## A.    Cervical fusion surgery

Trinity argues that Ibey should be precluded from offering any testimony related to his 2008 cervical fusion surgery or any testimony that his automobile accident caused him to undergo that surgery. There are, Trinity argues, two reasons why this testimony should be barred: (1) Ibey's expert disclosures are inadequate under Rule 26(a)(2)(C) and (2) there is no foundation for that testimony. The Court grants the motion.

Rule 26(a)(2)(C) provides:

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to

3

present evidence under Federal Rule of Evidence 702, 703, or 705; and

> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

Treating physicians don't need to provide a written report under Rule 26 to the extent that their opinions are formed during the course of treatment. *Goodman v. Staples the Off. Superstore LLC*, 644 F.3d 817, 826 (9th Cir. 2011). So their opinions are subject Rule 26(a)(2)(C). If a party intends to provide testimony from a treating physician, the party must disclose: (1) the subject matter of the treating physician's testimony and evidence and (2) a summary of the facts and opinions to which the treating physician is expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

The District of Arizona cogently explained the purpose of Rule 26(a)(2)(C):

> Rule 26(a) (2)(C) was created to resolve the tension that sometimes prompted courts to require reports under 26(a)(2)(B) from witnesses exempted from the expert report requirement. See Fed. R. Civ. P. 26(a)(2)(C), advisory committee's note 2010 Amendment. The Rule strikes a balance between requiring an expert report from a witness like a treating physician, who was not specially retained to provide expert testimony and requiring a defendant to search through hundreds of pages of medical records in an attempt to guess at what the testimony of a treating physician might entail. In this case, the Court cannot find that Plaintiffs' and Plaintiff Intervenor's failure to properly follow the requirement of Rule 26(a)(2)(C) was substantially harmless simply because Plaintiffs and Plaintiff–Intervenor believe that Defense counsel correctly guessed at the substance of Dr. Alcott's testimony before the

4

time to disclose responsive witnesses had expired. If the Court were to allow this kind of "find the Easter Egg" approach, it would allow litigants to manipulate the expert disclosure rule in a way that would materially increase the cost of litigation. An opposing party should be able (and be entitled) to read an expert disclosure, determine what, if any, adverse opinions are being proffered and make an informed decision as to whether it is necessary to take a deposition and whether a responding expert is needed.

*Cooke v. Town of Colo. City*, 2013 WL 551508 at *5 (D. Ariz. Feb. 13, 2013); *see also Brown v. Providence Med. Ctr.*, 2011 WL 4498824 at *1 (D. Neb. Sept. 27, 2011) (observing that courts "will not place the burden on Defendants to sift through medical records in an attempt to figure out what each expert may testify to").

If a party fails to disclose this information, the party can't use the non-disclosed information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Yeti by Molly Ltd. v. Deckers Outdoors Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). This rule "'gives teeth'" to Rule 26(a)'s disclosure requirements. *Joseph v. Linehaul Logistics Inc.*, 2012 WL 3779202 at *1 (D. Mont. Aug. 31, 2012) (quoting *Olson v. Mont. Rail Link Inc.*, 227 F.R.D. 550, 552–53 (D. Mont. 2005). And, as the Court observed in *Joseph*, the Court's stock scheduling order, which was issued here, expressly reminds the parties of these teeth. *Id.* That order states: "An inadequate report or disclosure

may result in exclusion of the expert's opinions at trial even though the expert has been deposed." (Doc. 20 at ¶ 9.).

Here, Ibey's disclosure specifically identifies nine individuals who provided Ibey with medical care and an additional nine categories of individuals who might have provided care. The disclosure doesn't identify the subject matter on which each treating professional might testify. Nor does it disclose a summary of the facts and opinions to which each (or any, for that matter) treating professionals might testify. And, specifically, as Trinity correctly points out, the disclosure makes no mention of who will offer testimony that the accident caused Ibey to undergo cervical fusion surgery in September 2008. Instead, Ibey's disclosure generically states that the nine individuals might offer testimony regarding their care of Ibey and that the specifics of their care can be found in "medical records, progress notes, letters and reports as well as any deposition testimony taken in this case." (Disclosure, Doc. 26-1 at 3.) Rule 26(a)(2)(C), as explained above, requires much more.

Ibey doesn't attempt to show that his failure to provide an adequate disclosure was "substantially justified or is harmless." *Id.* Instead, he relies on *St. Vincent v. Werner Enters.*, 267 F.R.D. 344 (D. Mont. 2010), to show that his disclosure was adequate. And he states that all the expected testimony from the

treating professionals can be gleaned from discovery documents. Both arguments fail.

First, *St. Vincent* was decided before Rule 26 was amended to include Rule 26(a)(2)(C). It has no bearing on this case.

Second, Rule 26(a)(2)(C) doesn't allow parties to sidestep their obligations under Rule 26(a)(2)(C) by making a broad, generic reference to previously disclosed discovery documents. Rule 26(a)(2)(C) doesn't allow the disclosing party to force other parties to play the "Guess the Testimony" game by sending them on a fishing expedition. *See Cooke*, 2013 WL 551508 at *5. The Court agrees with the District of Arizona's conclusion:

> An opposing party should be able (and be entitled) to read an expert disclosure, determine what, if any, adverse opinions are being proffered and make an informed decision as to whether it is necessary to take a deposition and whether a responding expert is needed.

*Id.* at *5. There's no way that Trinity could do this with Ibey's expert disclosure, particularly with respect to his 2008 cervical fusion surgery.

Since Ibey's disclosure fails to disclose who might offer testimony regarding his 2008 cervical fusion surgery, he is precluded from referencing the surgery or offering any testimony that the automobile accident caused him to have that surgery. Fed. R. Civ. P. 37(c)(1); *see Yeti by Molly Ltd.*, 259 F.3d at 1106.

Since that testimony is precluded under Rule 26(a)(2)(C), the Court need not address whether there would have otherwise been adequate foundation for that testimony.

### B.     Ibey's right ankle injuries

Trinity moves to exclude any evidence or testimony related to Ibey's right ankle injuries and any related surgeries for the reason that those injuries and surgeries aren't causally related to the automobile accident at issue in this case. Ibey doesn't object to the motion, and it's granted.

### C.     Policy limits

Next, Trinity moves to exclude any testimony or evidence related to the policy limits. Ibey opposes the motion and argues that the testimony or evidence is relevant to his bad faith claim. The Court grants the motion in part. The insurance policy in this case provides uninsured/underinsured motorist benefits of $1,000,000 per occurrence.

Trinity argues that the actual amount of the policy limits is irrelevant because Trinity doesn't dispute that coverage is available and there's no dispute regarding the amount of the policy limits. Moreover, Trinity argues that if the amount of the policy limits is disclosed to the jury, that would unfairly prejudice Trinity because the jury might see such a large number and set it as the benchmark

for an award.

Trinity cites Montana state cases, a number of out-of-state cases, and decisions from other federal district courts that support its argument. Those cases generally stand for the proposition that the amount of the policy limits isn't relevant to the jury's determination of causation—e.g., whether an automobile accident caused particular injuries. *See e.g. Wallace v. Allstate Ins. Co.*, 2010 WL 200001 at *5 (S.D. Miss Jan. 14, 2010) ("The Court is of the opinion that the limits of coverage are not probative of the issues of damages, absent a controversy over the amount of coverage itself."); *Sandino v. Mason*, 2012 WL 1552425 at *3 (D. Md. 2012) ("Because the case at bar involves no contract dispute as to the amount of [underinsured motorist] coverage, evidence of coverage amount is inadmissible.").

Ibey agrees that the amount of the policy limits might be inadmissible as it relates to liability or causation in this case. But he argues that the amount of the policy limits is relevant as it relates to his bad faith claim:

> The coverage available to Plaintiff is an amount that could have entirely covered all of his damages in this matter. This is not a case which insufficient coverage was a reason for non-payment. Lingering doubt regarding this subject would prejudice the Plaintiff. The jury should not be permitted to be left guessing about whether coverage was sufficient in this matter. Evidence of Policy limits should go before the jury.

(Ibey's Response Br., doc. 43 at 4.)

By Ibey's own admission, the actual amount of the policy limits isn't relevant. Instead, what Ibey claims is relevant is whether there was sufficient coverage to cover all of Ibey's damages in this case.

The Court therefore grants Trinity's motion in part. Ibey may not offer testimony or evidence as to the actual amount of the policy limits. But this doesn't necessarily preclude him from eliciting testimony that there was sufficient coverage to cover all of Ibey's damages in this case. Ibey (or Trinity) might, for example, ask the appropriate witness: "Was there sufficient coverage under the policy to cover all of Ibey's damages?" Ibey has already admitted as much in his briefing: "The coverage available to Plaintiff is an amount that could have entirely covered all of his damages in this matter." (*Id.*) If Ibey wishes to ask this question or something similar at trial, Trinity may object, and the Court will then evaluate its admissibility.

### D.    Economic damages

Trinity next moves to exclude all evidence, testimony, or argument related to Ibey's alleged economic damages—lost wages, lost economic opportunity, etc. Trinity argues that the only evidence of economic damages in this case is that purportedly described in John Boyle's expert report and suffered by Ibey Sprinkler

& Landscape Inc., a separate entity from Ibey himself. Consequently, Trinity insists, Ibey can't recover those damages. Ibey, however, argues that evidence of the corporation's alleged damages are admissible. The Court grants Trinity's motion in part.

Corporations and stockholders have separate and distinct identities. *Johnson v. Booth*, 184 P.3d 289, 293 (Mont. 2008). Consequently, "Montana law is clear that the stockholders and guarantors of a corporation don't have the right to pursue an action on their own behalf when the cause of action accrues to the corporation." *Id.* (citations and internal quotation marks omitted). Both parties here agree that Ibey may not recover for the corporation's economic damages.

Despite the corporation's separate identity, Ibey argues that evidence of its lost profits is admissible for purposes of his personal economic damages, his emotional distress damages, and his claim under Montana's Unfair Trade Practices Act.

### 1.    Admissibility as to personal economic damages

Ibey acknowledges that he can't recover for the corporation's lost profits, but he argues that those lost profits are admissible as evidence of his personal economic damages so long as those damages can be traced to the corporation's lost profits. Regardless of whether this theory holds water, Ibey hasn't properly

disclosed or supplemented his computation of damages.

As part of its discovery requests, Trinity posed the following interrogatory to Ibey:

> Please specify with particularity any and all damages Plaintiff is claiming in this lawsuit. For each type of damage, please include the nature of the damages claimed and a full description of the basis for such claim, the amount of damages claimed, and the method of computing or determining the amount of damages for such claim.

(Doc. 31-1 at 2.). Ibey provided a supplemental response to this interrogatory on October 15, 2012:

> **Economic Damages:** Chuck is claiming lost wages, lost economic opportunity for both past and future losses in this case. The basis for this element of Chuck's claim is set out in John Boyle's Expert Witness Report (IBEY-1 to 50). Chuck's total claim for economic damages currently totals $243,903.00. As these figures change, this information will be supplemented.

(*Id.* at 3.)

According to Ibey, the sole basis for his economic damages is Boyle's expert report. That report, though, addresses only the corporation's lost profits, not Ibey's personal lost wages or economic damages. (Boyle's Expert Report, doc. 31-2). Tellingly, the amount of economic damages that Ibey himself claims—$243,903.00—is precisely the amount of profits that Boyle estimates the corporation lost. (*Id.* at 6.) In other words, Ibey's response to Trinity's

interrogatory impermissibly equates his economic damages with the corporation's lost profits. Without more, Boyle's report is irrelevant and inadmissible because it alone sheds no light on Ibey's personal economic damages.

Ibey now acknowledges as much in his briefing for this motion. He writes: "What is not permissible is for the individual to merely claim all corporate loss as a personal loss." (Response Br., doc. 39 at 5) and "It is not Plaintiff's intent to claim that <u>all</u> of the losses sustained by Plaintiff's businesses are losses sustained by Plaintiff individually. Plaintiff concedes that this would be over-reaching." (*id.* at 6).

Now, instead of claiming the corporation's lost profits directly, Ibey asserts that he intends to use evidence of those lost profits to indirectly show how much money he lost as a result of the accident. Ibey maintains that evidence of the lost profits is admissible because his lost wages and lost economic opportunities can be traced to the lost profits. (Response Br., doc. 39 at 5–6 (discussing *Greenburg v. Cure*, 2013 WL 1767792 (D. Kan. Apr. 24, 2013)).

The problem, though, is that Ibey hasn't provided any documentation, computation, or explanation of how his personal economic damages can be traced to the corporation's economic damages. The record doesn't show that he has disclosed how his economic damages are calculated, apart from Boyle's expert

report that detailed the corporation's lost profits.

If Ibey intends to provide his own testimony as a basis for his economic damages, including evidence such as pay stubs, tax returns, etc., he should have indicated as much in a supplemental response to Trinity's interrogatory. *See* Fed. R. Civ. P. 26(e). Moreover, that information is precisely the information that he should have disclosed to Trinity in his initial disclosures.[1] Rule 26(a)(1)(A)(iii) states that a party must provide to the other parties:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

And if any of the information previously provided in a discovery response or initial disclosures changes, then the disclosing party must supplement the previous response or disclosure. *See* Fed. R. Civ. P. 26(e).

If a party fails to provide information in an initial disclosure or properly

---

[1] Even though this case was removed from state court, the parties were still required to comply with Rule 26's requirements. (*See* doc. 8 at 2–3.) Ibey filed his initial disclosures along with his preliminary pretrial statement (doc. 18) on July 12, 2012. But for his computation of damages, he stated only: "Ibey's damages have not yet been reduced to a sum certain, but exceed the minimum statutory requirement of $75,000, exclusive of interest and costs." (*Id.* at 6.) Ibey provided his supplemental response to Trinity's interrogatory regarding economic damages just over three months later. (*See* doc. 31-1.)

supplement that disclosure or discovery responses, then the party can't use that information at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Here, there's no record that Ibey provided any computation of his economic damages other than Boyle's expert report, which details the corporation's economic damages. Ibey hasn't provided any documentation or explanation of how his personal economic damages can be traced to the corporation's economic damages.

Ibey's failure to provide this computation and explanation would ordinarily mean that, under Rule 37(c)(1), Ibey couldn't offer any evidence or testimony related to his economic damages other than Boyle's testimony. Boyle's report would be irrelevant, though, because there would be no admissible evidence that ties Ibey's personal losses to the corporation's losses.[2] In short, Ibey wouldn't be able to offer any evidence or testimony related to his alleged economic damages.

Rule 37(c)(1) has a safety valve that prevents these harsh results in some circumstances. The party that failed to properly disclose or supplement information won't be barred from using the information if he can show that "the

---

[2] This isn't to say that Boyle's report would otherwise be admissible if Ibey were permitted to introduce other evidence of his personal economic damages. But the report is clearly irrelevant without such evidence.

failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To be clear, Ibey makes no attempt at all to make this showing. Ninth Circuit law, though, provides Ibey with an additional safety valve. When, as here, a sanction under Rule 37(c)(1) would amount to dismissal of a claim—here, Ibey's claim for economic damages—the court "must consider whether the claimed noncompliance involved willfulness, fault, or bad faith" and also "consider the availability of lesser sanctions." *R & R Sails Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247–48 (9th Cir. 2012) (citations omitted).

There isn't sufficient evidence in the record that permits the Court to make this finding. So the Court orders Ibey to show cause why he shouldn't be barred from presenting any evidence of his personal economic damages under Federal Rule 37(c)(1) and *R & R Sails Inc.* Should he choose to not or fail to show cause, he will be barred from presenting that evidence. Trinity will be permitted to respond to Ibey's response if he files one, and Ibey will have to pay Trinity its attorney's fees that it incurs in responding. *See* Fed. R. Civ. P. 37(c)(1)(A).

### 2. Admissibility as to Ibey's emotional distress claim

Economic damages aside, Ibey argues that evidence of the corporation's lost profits is relevant to his claim for emotional distress: "Regardless of the dollar amount of losses in this regard, the fact that there was a measurable loss to Mr.

Ibey's business supports his claim for emotional distress damages in this matter." (Response Br., doc. 39 at 7.) Trinity counters that: (1) Ibey can't recover, under either of these theories, for damage done to the corporation and (2) Ibey failed to disclose that his emotional distress damages are in any way based on the corporation's lost profits. Trinity's points are well taken.

In the interrogatory discussed in the preceding section, Trinity asked Ibey to specify "the nature of the damages claimed and a full description of the basis for such claim . . . ." (Doc. 31-1 at 2.) Ibey responded with an in depth discussion of his emotional distress damages. (*See* doc. 31-1 at 4–6.) He didn't identify the corporation's lost profits—or any other harm to the corporation—as a basis for his emotional distress damages. The only bases that Ibey gave for his emotional distress claim were "injuries sustained in this lawsuit and the long period of time it is taking to resolve his claims." (*Id.* at 4.) The corporation's lost profits isn't an "injur[y] sustained in this lawsuit." As discussed above, the corporation's lost profits is an injury to the corporation, not one that Ibey sustained personally.

If Ibey wanted to argue at trial that Trinity's conduct somehow caused the corporation to lose profits, which, in turn, caused Ibey emotional distress, then he should have supplemented his discovery responses to indicate that. This isn't to say that his argument would have been successful or admissible. But his failure to

supplement his discovery responses means that the evidence and testimony related to the corporation's lost profits is subject to Rule 37(c)(1) and must be barred at trial.

Unlike his economic damages claim discussed above, Ibey's emotional distress claim won't be practically dismissed if evidence or testimony related to the corporation's lost profits is barred. He claims there are other bases for his emotional distress. So the Court need not conduct the inquiry required by *R & R Sails* before barring the evidence and testimony.

### 3. Admissibility as to the Unfair Trade Practices Act

Finally, Ibey argues that evidence of the corporation's lost profits—more specifically, Boyle's calculation of those lost profits and Ibey's transmittal of that calculation to Trinity—is relevant to his claim under the Unfair Trade Practices Act. Ibey asserts that Trinity violated the Act, in part, because it failed to investigate his damages. Ibey claims that Trinity had no excuse for that failure because he sent Boyle's report to Trinity. Trinity argues the evidence or testimony related to lost profits or Boyle's report is inadmissible for the same reasons above—Ibey can't recover the corporation's lost profits and this use of Boyle's testimony wasn't previously disclosed.

Trinity is correct. Ibey again conflates his damages with the corporation's

damages. If Ibey sent Boyle's report to Trinity, he wasn't sending Trinity a calculation of his personal damages that he could recover from Trinity. He was sending Trinity a calculation of the corporation's damages, which he can't recover personally. Ibey has failed to show that Trinity had any obligation to investigate the corporation's alleged damages.

Evidence of Boyle's report and its transmittal to Trinity is therefore not relevant and is excluded because it isn't of any consequence to Ibey's personal damages that he claims in this case. *See* Fed. R. Evid. 401 (stating that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action").

### E. Expert Larry Reed

Trinity moves to preclude one of Ibey's expert's—Larry Reed—from: (1) offering an opinion that Trinity violated Montana law or (2) implying such an opinion by testifying that Trinity failed to observe or otherwise comply with its internal claims-handling procedures. Ibey doesn't oppose the motion, and it's granted.

### F. Exclusion of witnesses at trial under Rule 615

Finally, Trinity moves under Federal Rule of Evidence 615 to exclude

witnesses, other than Ibey and a representative for Trinity, from attending trial when they aren't testifying. Ibey doesn't oppose the motion, and it's granted.

## II.    Ibey's motions in limine

Ibey has likewise filed six motions in limine, some of which are opposed and others that aren't. Ibey's opposed motions are motions to exclude evidence or testimony related to: (1) his use of medical marijuana (2) collateral source benefits, and (3) his pre-existing injuries. Ibey's unopposed motions are motions to exclude: (1) previously undisclosed expert testimony regarding the apportionment of his injuries, (2) medical opinions from insurance adjusters, and (3) hearsay testimony. The Court grants the motions in part and denies them in part.

### A.    Apportionment of Ibey's injuries

Ibey moves to exclude previously undisclosed expert testimony regarding the apportionment of his injuries. His supporting brief, though, suggests he is asking for much more. It reads: "No Defense medical expert witness testimony has been disclosed by Defendant. Thus, any previously undisclosed expert medical opinions should be excluded at trial." Trinity argues that this request is too broad and premature, but Trinity doesn't object to the motion to the extent that it's limited to previously undisclosed expert testimony regarding apportionment.

Trinity writes: "Defendant has not alleged apportionment of injuries as an affirmative defense in this case, and instead is defending this case based on the many causation issues that exist." In his reply brief, Ibey acknowledges this concession and asks for nothing more. The Court therefore grants Ibey's motion to the extent that he asks the Court to exclude previously undisclosed expert testimony regarding the apportionment of his injuries.

### B.    Medical opinions from insurance adjusters

Ibey next moves to preclude insurance adjusters from offering expert medical causation opinions or apportionment opinions. Again, Trinity doesn't object to the motion to this extent. Trinity "acknowledges that the adjusters do not have the foundation to provide expert opinions on medical causation." Indeed, Trinity hasn't indicated that it would ask adjusters to offer such testimony. Nevertheless, the Court grants the motion.

### C.    Pre-existing injuries

Ibey initially moved the Court to preclude any evidence of his pre-existing injuries, but he stated in his reply brief that he has withdrawn that motion. The Court therefore need not rule on this motion.

### D.    Hearsay

Ibey "requests that the Court advise all counsel to instruct their witnesses

not to volunteer hearsay statements to the extent the hearsay statements do not constitute exceptions to the hearsay rule." (Ibey's Opening Br., doc. 33 at 11.) Ibey's motion is denied. Ibey's counsel acknowledges that he and opposing counsel "are capable of identifying potential hearsay testimony," so they should be more than capable of offering a timely objection if a witnesses attempts to offer inadmissible testimony. The Court isn't going to try the case for the parties or order counsel to make sure that their witnesses follow the Federal Rules of Evidence. That's counsels' job.

### E.    Medical marijuana

Ibey moves to exclude any evidence or testimony related to his use of so-called "medical marijuana." He argues that it's irrelevant and, even if it was relevant, it's unfairly prejudicial and should be excluded under Rule 403.

Trinity counters that the evidence and testimony is relevant to Ibey's credibility. Trinity claims that Ibey told one of his treating physicians, Dr. Jacobsen, that he was using medical marijuana on Dr. Rosen's, another treating physician's, recommendation. Dr. Rosen, however, testified that he didn't prescribe medical marijuana to Ibey. Trinity therefore claims that the evidence is relevant to Ibey's credibility—namely whether he was being honest with his doctors.

In his reply brief, Ibey doesn't dispute that evidence and testimony related to his use of medical marijuana might be relevant to his credibility. Instead, he summarily claims that the evidence isn't relevant to any facts in the case and shouldn't be admitted at trial.

Ibey has failed to show that his use of medical marijuana is "inadmissible on all potential grounds." *See BNSF*, 2010 WL 4337827 at *1. Trinity has provided one example of how the evidence might be relevant, and Ibey doesn't dispute that example. The Court therefore denies Ibey's motion, subject to renewal at trial "so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *See id.*

**F.     Collateral source of benefits**

Finally, Ibey argues that the Court should exclude any evidence or testimony that he received or is receiving benefits from collateral sources. In his reply brief, though, he agrees with Trinity's suggestion that a ruling on this issue should be deferred until trial. The Court agrees and denies Ibey's motion, subject to renewal at trial.

IT IS ORDERED that Trinity's motions in limine are GRANTED IN PART and DENIED IN PART as follows:

•     Trinity's motion to preclude Ibey from offering testimony or evidence

related to his 2008 cervical fusion surgery (doc. 25) is GRANTED.

- Trinity's motion to preclude Ibey from offering testimony or evidence related to his right ankle injuries (doc. 27) is GRANTED.

- Trinity's motion to preclude Ibey from offering testimony or evidence of the policy limits (doc. 28) is GRANTED IN PART. Ibey may not offer testimony or evidence of the actual amount of the policy limit, but that doesn't preclude him from eliciting testimony that the policy provided sufficient coverage to cover Ibey's alleged losses. The Court will rule on the admissibility of that testimony and evidence, if necessary, at trial.

- Trinity's motion to exclude evidence of economic damages (doc. 30) is GRANTED IN PART. Evidence related to lost profits suffered by Ibey Sprinklers and Landscape Inc. isn't admissible as it relates to Ibey's claim for emotional distress and his claim under the Unfair Trade Practices Act. As the evidence relates to Ibey's claim for personal economic damages, he is ordered to show cause why that evidence shouldn't be excluded under Federal Rule of Civil Procedure 37(c)(1) and *R & R Sails Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247–48 (9th Cir. 2012) (citations omitted). If Ibey intends to offer this evidence at trial, he must respond to the order to show cause no later than 14 days from the date of this order. Trinity will then have 14 days to respond. Ibey must pay Trinity's attorney's fees that it incurs in responding.

- Trinity's motion to preclude expert witness Larry Reed from: (1) offering an opinion that Trinity violated Montana law or (2) implying such an opinion by testifying that Trinity failed to observe or otherwise comply with its internal claims-handling procedures (doc. 34) is GRANTED.

- Trinity's motion to exclude witnesses, other than Ibey and a representative for Trinity, from attending trial when they aren't testifying (doc. 36) is GRANTED.

IT IS FURTHER ORDERED that Ibey's motion in limine (doc. 32) is

GRANTED IN PART and DENIED IN PART as follows:

- Ibey's motion to preclude Trinity from offering previously undisclosed evidence or testimony regarding the apportionment of Ibey's injuries is GRANTED.

- Ibey's motion to preclude Trinity from eliciting expert medical causation opinions or apportionment opinions from insurance adjusters is GRANTED.

- Ibey's motion, as it relates to his pre-existing injuries, is WITHDRAWN.

- Ibey's request that the Court order counsel to instruct their witnesses to not offer hearsay testimony is DENIED.

- Ibey's motion to preclude Trinity from offering evidence or testimony related to Ibey's use of medical marijuana is DENIED, subject to renewal at trial.

- Ibey's motion to preclude Trinity from offering evidence or testimony related to collateral source benefits is DENIED, subject to renewal at trial.

Dated this ___ day of August 2013.

Donald W. Molloy, District Judge
United States District Court